RAWLS, Judge.
Lawrence M. Hallihan by this appeal from a judgment of guilty of murder in the first degree and a sentence of life imprisonment urges the following three points as grounds for reversal:
1. Did the trial court err in systematically excluding all prospective jurors who expressed conscientious scruples that would prevent them from finding the appellant guilty of an offense that carried with dt capital punishment?
*413 2. Did the trial court err in admitting into evidence a written confession when the 16-year-old appellant was not clearly advised of his immediate right to counsel ?
3. Did the trial court err in refusing to receive into evidence psychological testing reports that were made by a psychologist under the immediate control and direction of the testifying. psychiatrists and upon which the psychiatrists based their opinions?
The record in this case reflects the tragic story of a mixed-up young man. Hallihan first disclosed evidence of a schizoid personality pattern when he was in the tenth grade at which time he suffered severe headaches and disappeared from home for some ten days leaving a note that he wanted to find himself. In the eleventh grade, at age 16, he made good grades, worked during after-school hours and saved over $600.00 which was to be used for a college education. During the Spring of 1967 he took his steady girl friend to a dance. After leaving the dance, according to Larry, he and his girl friend got into a heated argument, at which time he strangled her to death.
One week after being arrested, Larry was taken to the psychiatric ward of Duval Medical Center where he stayed for two months, and during this time was diagnosed as having a schizoid personality pattern of disturbances with some mixtures of complicity.
After spending several months in the juvenile detention home, Larry was released on bond. One week before his trial, which was set for March 11, 1968, he testified that “things closed in on him.” At this time he took his brother’s gun, left a suicidal note and left home. He did not kill himself. According to Larry, while hitchhiking he was picked up by one Arthur Johnson, a dope peddler, and taken to New York City. During this sojourn, he took methedrine, LSD and smoked marijuana. From New York City he and Johnson went to Boston, and several days later Larry was admitted to a New Hampshire mental hospital, the records of which reflect that he had been admitted at the request of police who charged him with assault of a 70-year-old woman. After two months treatment in the mental hospital his condition was diagnosed by a psychiatrist as catatonic schizophrenia. Larry was subsequently returned to Jacksonville, put to trial for the murder of his girl friend, and the jury returned a verdict of guilty of murder in the first degree with a recommendation for mercy.
As to the first point which concerns exclusion of prospective jurors who expressed conscientious scruples against capital punishment, it is apparent that appellant relies upon the minority opinion of Mr. Justice Douglas in Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968). The majority of the United States Supreme Court held that the sentence of death in Witherspoon had to be reversed but not the adjudication of guilt. Since the jury in the instant case recommended mercy and a death penalty did not result, the adjudication of guilt must be sustained upon the authority of Witherspoon, supra.
Appellant’s second point concerns the admission into evidence of a written confession by the defendant who was 16 years old at the time of making same. This record discloses that defendant’s father was present during the material periods of time preceding the procurement of the confession and the meticulous warnings given by the interrogating officers fully comply with the dictates of Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, (1966).
Appellant’s third and last point concerns the refusal of the trial court to receive into evidence psychological testing reports made by psychologists for the use and benefit of psychiatrists in their diagnoses. The reports were clearly hearsay and the trial court was correct in not permitting their introduction into evidence.
*414 The record in this cause clearly reflects without contradiction that this defendant suffered some mental disorder; however, there was adequate and sufficient medical evidence upon which the jury could base its decision that the defendant’s mental derangement was not such as meets the legal test of “not guilty by reason of insanity” as long defined in this jurisdiction.
The judgment of conviction and the sentence are affirmed.
JOHNSON, C. J., and SPECTOR, JJ., concur.